UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN GERALD CONWAY, | |
| Plaintiff, | |
| v. | No. 1:12-cv-6338 |
| | Judge James B. Zagel |
| ALLSTATE INSURANCE COMPANY, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Allstate Insurance Company's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56. Plaintiff John Conway alleges that he was unlawfully terminated from his position at Allstate Insurance Company due to his age, in violation of the Age Discrimination Employment Act ("ADEA"), 29 U.S.C. §621 et seq.

For the following reasons, Defendant's Motion for Summary Judgment is granted.

## I. BACKGROUND

Plaintiff John Conway, born in 1955, was employed by Allstate Insurance Company ("Allstate") from 1981 to 2009. From 1999 onward, Conway worked in Allstate's Sourcing and Procurement Solutions ("SPS") department, where he was ultimately classified as a Band E employee. Under Allstate's salary band classification system, higher band employees such as Conway were responsible for more complex and skilled work and were compensated accordingly. In 2009 Conway was a member of the Enterprise Services team responsible for sourcing commodities for the corporation, such as furniture, office supplies, and company cars.

During all relevant times leading up to and following Conway's termination, Lori Yelvington, born 1958, was the Senior Vice President of SPS. In the fall of 2008, Don Civign

joined Allstate as its CFO and oversaw the Finance Shared Services ("FSS") department. Yelvington reported directly to Civign.

In or around late 2008 Civign asked his staff, including Yelvington, to decrease their 2009 budgets while increasing organizational efficiency. Yelvington testified that she understood that Civign wanted her to reduce the SPS budget by about $1 million, although Civign testified that he did not recall allocating the budget cuts by sub-department. Nevertheless, Yelvington set about to reduce the SPS budget and concluded that, because a significant portion of the budget came from employee salaries, the best way to accomplish her objective was to implement a Reduction in Force/Job Elimination ("RIF/JE"). As the sole officer responsible for her department's budget, Yelvington did not require Civign's approval to make budget decisions for SPS, including personnel decisions. Accordingly, Yelvington determined that the department's top-heavy structure was inefficient and sought to redistribute work more appropriately, streamline the payroll, and achieve a more traditional pyramid structure with a greater number of lower-salaried employees than high band employees. In one document, Yelvington wrote that she also hoped the RIF/JE would usher in a "culture change" in the department.

Working with two of her direct reports, Joe Duffy and Lynne Iverson, Yelvington developed the business case and communication plan for her RIF/JE initiative. Duffy and Iverson were both over 40 in 2009, having been born in 1953 and 1965 respectively. After consulting with HR Senior Manager Larry Matson, Yelvington compiled her business case with the help of Duffy and Iverson. Yelvington testified that among the factors she considered were the criticality scores of various commodities, although criticality score was not determinative in any particular case.[1] For instance, several of the commodities for which Plaintiff was responsible had low

---

[1] Within SPS, various commodities were assigned different "criticality" ratings to assess the commodity's importance to SPS and Allstate.

criticality scores, but other employees whose commodities had similar or lower criticality scores were retained. Yelvington also testified that she considered whether any particular employee had team-led responsibilities, which could make their duties more difficult to redistribute in the event of termination.

Ultimately, Yelvington alone selected the employees for termination, including Plaintiff. All the employees impacted by the RIF came from Band D, Band E, or the non-exempt category. No Band A, B, or C employees (that is, the lower salaried employees) were impacted. All impacted employees were 39 or older in 2009, with birth years ranging from 1948 to 1970. Following the RIF, the proportion of employees over the age of 40 in each of the impacted Band levels remained roughly the same or, in a few cases, actually increased. For instance, prior to the RIF, 88% of Band D employees and 94% of Band E employees were over 40. After the RIF, 92% of employees in both Bands were over 40. Of the SPS employees who remained, at least 14 were Plaintiff's age or older, including five employees who were in their sixties. Subsequently, however, two of the aforementioned 14 employees were terminated and several left Allstate or retired over the course of the next 18 months.

With regards to Plaintiff, Yelvington testified that she selected him for the RIF at least in part because his commodities were neither complex nor highly critical and because he did not have any team-led responsibilities. For these reasons, Yelvington asserts that she concluded his duties could more easily be redistributed among lower-banded employees. On April 22, 2009, Iverson and an HR representative informed Plaintiff that his position was being eliminated. While Allstate did not hire a replacement to perform Plaintiff's job as previously defined, his commodities were redistributed to two Band A employees, Karen Koo (born 1980) and Andrew O'Donnell (born 1982).

Plaintiff points to three younger co-workers whom he alleges were otherwise similarly situated to him but retained their jobs. Iverson and Sandra Troiano—both of whom were over 40 in 2009—were senior managers who reported directly to Yelvington. Troiano, a part-time employee, was asked to go full-time and quickly advanced, leading Plaintiff to believe she was treated more favorably than him. Iverson, too, received a promotion, albeit not one for which Plaintiff himself had applied. Christi Lockhart, born 1978, was a Band C employee on the Technology team and was responsible for the hardware commodity, which Yelvington testified was highly critical to the organization. Lockhart received the Employee of the Month award after a few months with the organization. With respect to each of these employees, Plaintiff admits that he has no knowledge of their work performance.

Plaintiff alleges that after the RIF/JE, his former coworkers told him that Yelvington announced she was going to "get fresh help in here" or "freshen up the organization if workloads are heavy." Yelvington denies making these comments, and neither Duffy nor Iverson, who would have been present at the meeting, recall hearing them. From April 2009 through the end of 2009, SPS hired approximately four new employees. None of them were hired as one-to-one replacements for any of the positions held by terminated in the RIF, though Plaintiff asserts that some new hires did absorb some of the former employees' duties.

On December 29, 2009, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Among his allegations of various violations of the ADEA, Plaintiff asserted that at a golf outing in or around 2003, Yelvington asked him how old he was and how many children he had. When he replied that he had no children, he alleges that Yelvington commented, "You've been working here this long and you don't have any children? Why are you working? You shouldn't be working here. You're rich… Somebody

your age that's worked here this long with no children, there's no reason you couldn't retire." Yelvington denies making these comments.

Finally, Plaintiff recalls a succession planning meeting in 2003 or 2004 in which Yelvington stated that Allstate needed to "get rid of the old culture" and "get some 'new blood' into the company." Plaintiff acknowledges that the words "culture" and "new blood" do not necessarily refer to age, although he believes that is what Yelvington was inferring here. Additionally, Plaintiff recalls Yelvington telling a room including several older white males that all the "old white males have to go," although he admits that this comment was unconnected to the RIF/JE that occurred five years later.

The EEOC issued a notice of right to sue in or around June 2012 and Plaintiff filed this action on August 10, 2012.

## II. LEGAL STANDARD

**A. Summary Judgment**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To determine whether any genuine fact issue exists, the court must assess the proof as presented in the record, including depositions, answers to interrogatories, admissions, and affidavits, to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Fed. R. Civ. P. 56(c); *Scott v. Harris,* 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations. *Omnicare, Inc. v. UnitedHealth Grp., Inc.,* 629 F.3d 697, 704

(7th Cir. 2011). If a claim or defense is factually unsupported, the court should dispose of it at the summary judgment stage. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. In response, the non-moving party cannot rest on bare pleadings but must designate specific material facts showing there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 598 (7th Cir.2000).

**B. ADEA Legal Standards**

The ADEA prohibits employers from discriminating against employees who are 40 years old or older because of their age. 29 U.S.C. §§ 623(a)(1); 631(a). A plaintiff bringing an ADEA claim must show that his age was the "but for" cause of his termination, not simply one of many factors. *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 455 (7th Cir. 2011) (citing *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009)); *Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009).[2] "Defendant may rebut evidence of causation by providing a non-discriminatory justification for the employer's adverse action. To prevail, Plaintiff must then demonstrate that Defendant's age-neutral explanation was pretextual—that is, that the employee's age "'tipped the balance in favor of discharge.'" *Mangrum v. Morrison Timing Screw Co.*, 2004 WL 2581091 at *8 (N.D. Ill. 2004) (quotations omitted).

In responding to a defendant's motion for a summary judgment on an ADEA claim, a plaintiff may proceed via the "direct" or "indirect" method of proof as laid out in *McDonnell*

---

[2] Although some courts in this district have used a less stringent causation standard in the summary judgment context, my conclusion is the same under the but-for standard promulgated by *Gross* and the more lax summary judgment standard that is sometimes used. *See Anderson v. Jewel Food Stores, Inc.*, 837 F.Supp.2d 826, 833-34 (N.D. Ill. 2011) ("[A]t summary judgment a plaintiff need only present evidence [from which a reasonable jury could find causation; no more is necessary at this stage.'") (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)).

*Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). No matter how the plaintiff proceeds, the Seventh Circuit has emphasized that although courts may get lost in the "technical nuances" of the two methods, the "central question at issue is whether the employer acted on account of the plaintiff's [age] . . ." *Morgan,* 724 F.3d at 996–97; *see also Van Antwerp v. City of Peoria,* 627 F.3d 295, 297 (7th Cir. 2010).

## III. DISCUSSION

### A. Direct Method

Plaintiff asserts that he can prove his case by both the direct and indirect methods. A plaintiff can prevail under the direct method by offering direct evidence of an employer's discriminatory motivation, or by presenting a "'convincing mosaic' of circumstantial evidence" that would permit an inference of discrimination even in the absence of direct proof. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012); *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008). Circumstantial evidence of intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Hemsworth v. Quotesmith.Com, Inc.,* 476 F.3d 487, 491 (7th Cir.2007) (quotations omitted).

Because Plaintiff lacks direct proof of discrimination, he relies on circumstantial evidence. However, the evidence he offers does not create the type of convincing mosaic that is necessary to support allegations of discrimination. That evidence is discussed in turn below.

### 1. Yelvington's Comments

Plaintiff points to several comments Yelvington made over the years that he contends displayed either overt or inferred age prejudice. Specifically, Plaintiff considers Yelvington's expressed intent to create a "culture change" in furtherance of her "desired future organization" to be a coded expression of intent to terminate older workers based on their age. But Plaintiff offers no evidence other than speculation that this is what Yelvington meant by these phrases, and Plaintiff admits the phrases do not refer to age or even seniority on their face. Without evidence to the contrary, these commonplace and facially neutral expressions do not constitute direct evidence of age discrimination. *See e.g., Hoffman v. Rockford Public Sch.*, 2012 U.S. Dist. LEXIS 125902, *4-5 (N.D.Ill. Sep. 6, 2012) (decisionmaker's comments, including "out with the old, and in with the new" and referencing her intent to "change the culture" were benign figures of speech and did not constitute direct evidence of age discrimination); *Lepanto v. Ill. Cmty. Coll. Dist. #525*, 2000 WL 15098, at *6 (N.D. Ill. 2000) (decisionmaker's comments about wanting to move the administration into the "new millennium" and wanting a "fresh start" and a "new mix" were "ambiguous at best" and did not constitute direct evidence).

Plaintiff does offer other more incriminating statements, such as Yelvington's alleged comment that "old white males have to go" or the conversation in which Yelvington allegedly remarked upon Plaintiff's childlessness and urged him to retire. However in each of these cases, the conversations occurred five or more years before the events in question and Plaintiff was unable to causally link the comments to either the RIF/JE initiative in general or Plaintiff's termination in particular. *See, e.g., Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 611-612 (7th Cir. 2001) (finding that an employer's statement that the organization was "not a place for women to work" four years before plaintiff's firing was too temporally distant to factor into the

decision-making process four years later); *see also Magallenes v. Illinois Bell Tel. Co.*, 728 F.Supp.2d 982, 992 (noting that "'the less direct the connection between the comment and the employment action—that is, if the comment was not made in temporal proximity to the employment action, or if the comment was not made in reference to that action—the less evidentiary value the comment will have'") (quoting *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 576 (7th Cir. 2003)). Because the comments in this case are either facially neutral or were made five years before the RIF/JE in question, they do not raise an inference of age discrimination.

### 2. Suspicious Circumstances

Plaintiff contends that a host of suspicious circumstances surrounding the RIF/JE compel the conclusion that age discrimination was a motivating factor. In support of this argument, Plaintiff claims Yelvington failed to consider alternatives for cutting costs that would not require termination, such as cutting salaries, forgoing bonuses, or redistributing the redundant high-band workers among the lower Bands. There are innumerable factors that inform economic business decisions, and it is not the Court's role to question Allstate, Civgn and Yelvington's business judgment regarding their corporate goals. *See Reyno v. PNB Remittance Ctrs, Inc.,* 2011 WL 3021300, at *8 (N.D.Ill. July 22, 2011) ("The court may not, however, second-guess an employer's budget decisions during an economic downtown [sic], or its business judgment generally, as the court must adhere to the well-established principle that '[courts do] not sit as a super-personnel department with plenary authority to review ... business decisions.'") Indeed, even if Plaintiff's preferred alternatives would have cut costs, that fact would not demonstrate that Yelvington and other decisionmakers were actually motivated by age discrimination, or that their stated motive to cut costs and increase efficiency was pretextual. *See*

*Cole v. Illinois Tool Works, Inc.*, 924 F.Supp.2d 978, 992 (N.D. Ill. 2013) (plaintiff may disagree with her employer's decision to demote her but "the company's business decision to do so is not evidence that her discharge was a pretext for age discrimination."). Likewise, Plaintiff's contention that the RIF/JE actually cost the company money and that Allstate paid out raises, bonuses, stock and equity in 2009 does not raise an inference of age discrimination, even if true. *See Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) ("[W]e must remember that, even if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason.").

Plaintiff also points to the allegedly suspicious timing of the firings occurring at the same that younger employees were being hired and promoted. However, there is no evidence that Yelvington was involved in these promotions, and without her involvement any causal link between Yelvington's alleged discriminatory animus and the privileged position of younger workers is severed. Additionally, there is no evidence that younger workers were hired or promoted to occupy the same positions, with the same benefits, responsibilities and salaries, as terminated older workers. Instead, the eliminated positions were redefined and some of the terminated workers' responsibilities were distributed to lower-band workers. There is simply no evidence that Allstate systematically removed older workers and slotted younger ones into pre-existing positions.

The same goes for Duffy's failure to take notes of his conversations with Yelvington about the RIF/JE, Duffy's comment that Yelvington's add-back plan will require "a strong explanation to everyone remaining," and Civign's observation that he would have ordinarily expected Yelvington to inform him of her add-back plan. These stray comments may just as well indicate poor communication among management, concern for office morale during a shake-up,

or any number of other explanations. These irregularities—if indeed they are irregularities—are neutral on their face, and Plaintiff has not provided evidence that they are animated by age-based discrimination either separately or together.

Finally, Plaintiff's statistics showing a "flurry" of older workers' retirements and departures after the RIF/JE are accompanied by no evidence that higher-ups pressured or encouraged older workers to depart because of their age. Indeed, it is hardly noteworthy or suspicious that the retirees (including at least one employee who had planned her retirement before the RIF/JE was announced) tended to be older workers, as they have reached the age where it would be natural to consider retirement.

For all these reasons, Plaintiff has not met his burden under the direct method.

**B. Indirect Method**

Under the indirect method, Plaintiff must show that "'(1) he was a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other similarly situated employees who were not members of his protected class or were substantially younger were treated more favorably.'" *Vaughn v. CA Tech., Inc.*, 2016 WL 2866416, at *4 (N.D. Ill. 2016) (quoting *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 475 (7th Cir. 2008)). Allstate does not dispute that Plaintiff has offered a *prima facie* case of discrimination by demonstrating that 1) he is a member of the protected class of workers over the age of 40; 2) he was meeting Allstate's legitimate performance expectations; 3) he was terminated, which constitutes an adverse employment action, and 4) his duties were absorbed by employees not in the protected class (in Plaintiff's case, 26-year-old Andrew O'Donnell and 28-year-old Karen Koo). Having done so, the burden shifts to Allstate to offer a legitimate business justification. They have met this burden by

pointing to the budgetary reasons behind the RIF/JE. *See, e.g., Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2006 WL 3333584, at *13 (S.D. Ind. Nov. 16, 2006) aff'd, 517 F.3d 470 (7th Cir. 2008) (reducing costs and becoming more efficient "is certainly a non-discriminatory reason" for a reduction in force); *Schuster*, 327 F.3d at 574 ("Restructuring an organization by eliminating management positions to make it more efficient, leaner, and to reduce costs is recognized as a legitimate nondiscriminatory reason.").

Thus, it is up to Conway to demonstrate that Allstate's economic explanation is pretext for age discrimination. "Pretext exists where the ostensible reason for the employment decision is really a lie contrived to mask unlawful discrimination." *Garcia v. Potter*, 2010 WL 1416211, at *6 (N.D. Ill. 2010) (quoting *Little v. Ill. Dep't of Revenue,*369 F.3d 1007, 1012 (7th Cir.2004)). "To show pretext in a RIF case, an employee must establish that an improper motive tipped the balance in favor of discharge" or that "the employer did not honestly believe in the reasons it gave for firing him." *Schuster*, 327 F.3d at 574 (quoting *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000)). Much of the evidence proffered as pretext has been discussed and disposed of above. The remaining items will be addressed below.

Plaintiff offers statistics such as the fact that 11 of the 13 employees impacted by the RIF/JE were 40 or older. Yet this fact in isolation is misleading—Bands D and E, which housed the highest-paid employees, were disproportionately made up of older workers so any attempt to eliminate higher-paid positions would necessarily impact that demographic. Even after the RIF/JE, the percentage of older workers in Bands D and E was roughly constant. With regard to other statistics about the ages of new hires and employees who received raises, Defendant rightly points out that this data is presented without any of the context that would be necessary to infer disparate treatment. For example, Plaintiffs do not discuss the differing job duties, qualifications,

or applicant pool demographics among the various groups, making it impossible to meaningfully compare their circumstances. This goes for O'Donnell, Koo, Iverson, Troiano, and Lockhart, as well as the younger workers cited in a general sense. Finally, Plaintiff's argument ignores the fact that many of the terminated employees' job duties were redistributed to older workers, just as others were assigned to younger workers.

Most fatal to Plaintiff's claims is the fact that there is simply no evidence that Yelvington did not sincerely believe that the RIF/JE would accomplish Allstate's budgetary goals or that Defendant did not believe in the necessity of the budgetary goals. Finally, there is no evidence that Yelvington considered compensation level as a proxy for age when making her termination decisions.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: October 26, 2016